IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Carol Z., | ) |
|       *Plaintiff*, | ) ) ) |
| v. | ) Case No. 3:22-cv-50024 ) |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | ) Magistrate Judge Lisa A. Jensen ) ) ) |
|       *Defendant*. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Carol Z. brings this action under 42 U.S.C. § 405(g) challenging a partially unfavorable decision on her applications for a period of disability, disability insurance benefits, and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is reversed, and the case is remanded.

**I. Background**

When Plaintiff filed for disability benefits nearly a decade ago, the Agency had a regulation in place, called the "treating physician rule," explaining how the opinions of a claimant's treating physician would be evaluated. 20 C.F.R. § 404.1527(c)(2); *see* SSR 96-2p, 1996 WL 374188 (S.S.A. July 2, 1996) (detailing application of treating physician rule).[2] Plaintiff has submitted three such opinions, but the Agency has yet to fulfill its duty when evaluating them.

This case has now returned to the Court after two prior remands. The first remand was

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 5.
[2] The regulation and ruling have since been rescinded, but only for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c; Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017). Plaintiff's claim was filed well before that date.

ordered pursuant to the parties' agreement in November 2017. *Carol H. v. Berryhill*, No. 17 CV 50053, Dkt. 20 (N.D. Ill. Nov. 20, 2017). On the first remand, the ALJ was ordered to evaluate treating source opinions and explain the weight given to such evidence. The second remand was ordered by the undersigned three years later. *Carol Z. v. Saul*, No. 19 CV 50134, 2020 WL 6940983 (N.D. Ill. Nov. 24, 2020).[3] This Court remanded the case so the ALJ could properly apply the treating physician rule to Plaintiff's treating source opinions.[4]

Plaintiff's first and second hearings were held before administrative law judge Cynthia M. Bretthauer ("the prior ALJ"), who found that Plaintiff was not disabled on both occasions. R. 38, 895. After the Court's prior remand, the Appeals Council reassigned the case to ALJ James E. MacDonald ("the ALJ"). R. 1772, 1823. The ALJ held a remote hearing on Plaintiff's applications on June 7, 2021. R. 1802. The ALJ issued a written decision on September 30, 2021, finding that Plaintiff was not disabled between August 1, 2013, and January 16, 2018. R. 1822. The ALJ also found that "beginning on January 16, 2018, . . . [t]he record support[ed] a worsening of [Plaintiff's] symptoms," R. 1818, and Plaintiff became disabled and thus entitled to benefits as of that date, R. 1822. The Court will refer to these two periods as the "pre-2018 period" and the "current period," respectively.

At step one of the inquiry, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. 1804–05. At step two, the ALJ found that Plaintiff had the severe impairments of diabetes mellitus with peripheral neuropathy, bilateral carpal tunnel syndrome, and obesity. R. 1805. At step three, the ALJ found that Plaintiff's impairments did not

---

[3] The Court's prior opinion also appears in the administrative record at R. 1754–69.
[4] At issue are Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income, filed on September 25, 2013. R. 97, 123. Plaintiff alleged a disability beginning on August 1, 2013, because of diabetes, carpal tunnel syndrome in both hands, anxiety, high blood pressure, and blood sugar problems. R. 97, 123–24. At the time of her alleged onset date, Plaintiff was 36; she is now 46. R. 97.

2

meet or medically equal a listed impairment. R. 1808–09.

For the pre-2018 period, the ALJ found that Plaintiff had the residual functional capacity (RFC)

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently, can stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday with normal breaks. She can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stands [sic], occasionally balance, stoop, kneel, crouch, or crawl. She can have no exposure to extreme cold or extreme heat, no exposure to unprotected heights, moving mechanical parts, or vibration, and no exposure to wetness or humidity. The claimant can frequently handle, finger, and feel with the bilateral upper extremities. She can elevate the legs prior to work, during normal breaks and after work, as needed.

R. 1809. Applying this RFC at step four, the ALJ found that Plaintiff could return to her past relevant work as a fast-food manager, as generally and actually performed, and her past relevant work as a manager, as generally performed. R. 1819–20. In the alternative, the ALJ found at step five that a significant number of jobs existed in the national economy that Plaintiff could perform, such as office helper, mail clerk, and order calls (sic). R. 1820–21. Based on these findings, the ALJ concluded that Plaintiff was not disabled during the pre-2018 period. R. 1822.

For the current period, the ALJ adjusted Plaintiff's RFC as follows, finding that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently [sic], can stand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday with normal breaks, can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl. She can have no exposure to extreme cold or extreme heat, no exposure to unprotected heights, moving mechanical parts, vibration, no exposure to wetness or humidity. She can frequently handle, finger, and feel with the left upper extremity and is limited to occasional handling, fingering, and

3

> feeling with the right upper extremity. Further, she can elevate the legs prior to work, during normal breaks and after work, as needed.

R. 1818. Applying this adjusted RFC at step four, the ALJ found that Plaintiff could no longer return to her past relevant work. R. 1821. At step five, the ALJ found that a few jobs existed in the national economy that Plaintiff could perform, such as furniture rental clerk; investigator, dealer accounts; and usher, but found that these jobs did not exist in significant numbers. R. 1822. Based on these findings, the ALJ concluded that Plaintiff was disabled during the current period. R. 1822.

Pursuant to 20 C.F.R. § 404.984, the ALJ's decision became the final decision of the Commissioner after remand. Thereafter, Plaintiff filed the instant action challenging only the ALJ's unfavorable decision that she was not disabled for the pre-2018 period. Dkt. 1.

Plaintiff argues that the ALJ erred when (1) evaluating her subjective symptoms, (2) evaluating the medical opinions, and (3) relying on the VE's purportedly unreliable testimony at step five. Because this Court finds, once again, that the ALJ failed to properly evaluate the opinions of Plaintiff's treating physician, the case will be remanded on that basis.

## II. Discussion

### A. The Medical Opinions

Because the Court described the facts of this case at length in its prior opinion, the Court will only summarize the medical opinions that form the basis of the Court's decision. *See generally Carol Z.*, 2020 WL 6940983.

Plaintiff submitted three RFC questionnaires from her primary care physician, Ruchi Prabhakar Parikh, M.D. R. 738–42, 857–61, 1205–09. Dr. Parikh has treated Plaintiff since October 2013. R. 2192. According to the most recent records in the case, Plaintiff's last visit with Dr. Parikh was in November 2020 with another visit scheduled for May 2021. R. 2132, 2142.

In September 2014, Dr. Parikh opined that Plaintiff had the limitations of never lifting

4

and/or carrying more than 10 pounds, frequently lifting and/or carrying less than 10 pounds, standing and/or walking for a total of 2 hours in an 8-hour workday, sitting for a total of 2 hours in an 8-hour workday, occasionally climbing stairs with a cane only, never climbing ladders, and rarely stooping, bending, crouching, or squatting. R. 740–41. Dr. Parikh further opined that Plaintiff would be able to walk less than a block without stopping; would need to elevate her feet to 90 degrees two hours per day; could use her left upper extremity to twist, manipulate, and reach no more than 10 percent of the workday; would need unscheduled 10-minute breaks every 15 to 20 minutes; and would be absent more than four workdays per month. R. 738–42.

In September 2015, Dr. Parikh opined that Plaintiff had the limitations of never lifting and/or carrying 20 pounds, rarely lifting and/or carrying 10 pounds, frequently lifting and/or carrying less than 10 pounds, standing and/or walking for less than 2 hours in an 8-hour workday, sitting for less than 2 hours in an 8-hour workday, rarely climbing stairs with a cane, never climbing ladders, never crouching or squatting, and rarely stooping or bending. R. 859–60. Dr. Parikh further opined that Plaintiff would be able to walk half a block without stopping; could use her upper extremities to twist, manipulate, and reach no more than 10 percent of the workday; would need unscheduled 5-minute breaks every 15 minutes; and would be absent more than four workdays per month. R. 857–61.

In May 2018, Dr. Parikh opined that Plaintiff had the limitations of never lifting and/or carrying 10 pounds or more, rarely lifting and/or carrying less than 10 pounds, standing and/or walking for a total of 2 hours in an 8-hour workday, sitting for a total of 2 hours in an 8-hour workday, occasionally climbing stairs, never climbing ladders, occasionally crouching or squatting, and rarely stooping or bending. R. 1207–08. Dr. Parikh specifically noted that climbing stairs was "not recommended" and that the limitations on crouching, squatting, stooping, and

bending were because Plaintiff had "instability due to leg neuropathy." R. 1208. Dr. Parikh further opined that Plaintiff would be able to walk one to two blocks without stopping; must use a cane at times; could use her upper extremities to twist between 50 to 60 percent of the workday, manipulate for 75 percent of the workday, and reach for 10 percent of the workday; would need unscheduled 5-minute breaks every 15 minutes; and would be absent more than four workdays per month. R. 1205–09. The ALJ did not give controlling weight to Dr. Parikh's opinions, opting to give them only "some weight." R. 1817.

**B. The Treating Physician Rule**

Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ can only discount a treating physician's opinions based on good reasons supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

The treating physician rule prescribes a two-step process. At the first step, the ALJ determines whether "a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). If so, the opinion is entitled to "controlling weight" and the ALJ must adopt it. SSR 96-2p, 1996 WL 374188, at *2. If not, the ALJ moves to the second step.

At the second step, the ALJ must evaluate certain checklist factors in order to determine exactly how much weight to give to the opinion. *Moss*, 555 F.3d at 561. Those factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R.

6

§ 404.1527(c). The Seventh Circuit has explained that "the checklist require[s] the administrative law judge to give great weight to [treating physicians'] evidence unless it [i]s seriously flawed." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *see* SSR 96-2p, 1996 WL 374188, at *4 ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

Plaintiff argues that, yet again, the ALJ failed to properly analyze Dr. Parikh's opinions under the treating physician rule. The Court agrees.

**1. The Court's Prior Opinion**

To understand this Court's frustration with the ALJ's analysis of Dr. Parikh's opinions, it is important to revisit this Court's prior opinion remanding the case. First, this Court found that the prior ALJ's conclusion that Dr. Parikh's opinion was not entitled to controlling weight was not supported by substantial evidence, citing numerous examples from the record. *Carol Z.*, 2020 WL 6940983, at *4–6. The Court then explained that, in addition to these substantive errors, the prior ALJ committed procedural error by failing to conduct an explicit analysis of each checklist factor when determining what weight to give Dr. Parikh's opinion. *Id.* at *6–7. Based on these conclusions, the Court reversed the prior ALJ's decision and remanded for further proceedings consistent with the following directions:

> On remand, the ALJ shall address each step of the treating physician rule. If the ALJ properly determines that Dr. Parikh's opinions do not deserve controlling weight, then the ALJ must consider the checklist factors under 20 C.F.R. § 404.1527(c) to determine what weight to give to the opinion.

*Id.* at *7–8. The ALJ repeated these directions at the outset of his decision:

> Pursuant to the District Court remand order, the Appeals Council has directed the Administrative Law Judge to address each step of the treating physician rule, particularly as it applied to Dr. Parikh's opinions and if the opinions did not deserve controlling weight, then I must consider the checklist factors under 20 CFR 404.1527(c) to

7

determine what weight to give to the opinion [R. 1748–96].

R. 1802.

### 2. The ALJ's Analysis

Although the ALJ purported to follow the treating physician rule, he provided no analysis for Dr. Parikh's 2014 and 2015 opinions under step one, merely stating, "I do not find that the opinions of Dr. Parikh are entitled to controlling weight." R. 1815–16.

The ALJ provided a partial analysis of Dr. Parikh's May 2018 opinion; however, the analysis was copied verbatim from the prior ALJ's decision. *Compare* R. 1815, *with* R. 891. This analysis still does not hold up under scrutiny. For instance, the ALJ said that Dr. Parikh's "extreme limitations are not supported, particularly in light of the near normal physical examination in March 2018 by Dr. Collins." R. 1815. As this Court previously explained, this examination was far from normal:

> In March 2018, Plaintiff's neurologist, Dr. Collins, observed absent ankle reflexes bilaterally, that Plaintiff felt a pinprick about 70% less in the legs than in the arms, had decreased vibration sense, that Plaintiff had difficulty standing with her eyes closed, that Plaintiff walked only "reasonably" well, and had decreased muscle bulk in the lower extremities.

*Carol Z.*, 2020 WL 6940983, at *4 (citing R. 1607–08). Indeed, the ALJ appears to have recognized as much, given that he cited Dr. Collins's examination as an example of how Plaintiff's symptoms began to worsen after January 2018. R. 1818. In any event, no one disputes that Plaintiff is disabled in the current period, meaning that the ALJ's only step-one analysis addressed the opinion with the least bearing on Plaintiff's functional limitations in the pre-2018 period.

Even though the ALJ failed to conduct any step-one analysis of Dr. Parikh's 2014 and 2015 opinions, the Commissioner defends the ALJ's decision to deny them controlling weight and instead afford them "some weight" based on a reading of "the ALJ's decision as a whole." Def.'s

8

Br. at 23, Dkt. 19. However, the only other part of the ALJ's decision addressing these opinions—and the only part the Commissioner cites—is the ALJ's step-two analysis of the checklist factors, which include supportability and consistency. *Id.* (citing R. 1816–17); *see* 20 C.F.R. § 404.1527(c)(3)–(4) (describing these factors). The ALJ found that the factors of supportability and consistency "tip the scales back to less weight." R. 1816.

Plaintiff concedes that the ALJ considered the checklist factors but argues that the ALJ cherry-picks the findings in this record with respect to the supportability and consistency factors. Pl.'s Br. at 18–19, Dkt. 12.

The Court agrees that the ALJ's analysis of the supportability and consistency of Dr. Parikh's opinions is inadequate. As detailed further below, this is in large part because the ALJ merely restated the prior ALJ's consistency and supportability analysis, despite the fact that this Court had previously ruled that that analysis was not supported by substantial evidence.

With respect to the supportability factor, the ALJ focuses entirely on Plaintiff's lower extremity limitations. R. 1816–17. The ALJ's failure to address Dr. Parikh's opined restrictions regarding Plaintiff's upper extremities or her need for breaks and absences leaves the Court with *no* reasons for concluding these limitations lacked support, much less the good reasons required by the treating physician rule. 20 C.F.R. § 404.1527(c)(2); *see* SSR 96-2p, 1996 WL 374188, at *5 ("[The ALJ's] decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). This omission also runs afoul of Seventh Circuit precedent emphasizing that the ALJ's reasons for giving little weight to a treating physician's opinions must be adequate "to build an accurate and logical bridge between the evidence and the result." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

9

With respect to the supportability analysis the ALJ conducted regarding Dr. Parikh's lower extremity limitations, the Court again finds that the analysis is inadequate. For example, the ALJ places a great deal of significance on the fact that Dr. Parikh's records do not reflect monofilament testing. R. 1816–17. But Dr. Parikh reported in October 2015 that Plaintiff had had an "abnormal monofilament test in clinic." R. 868. Dr. Parikh confirmed this in January 2019, stating, "I performed the tests, I believe that may have been documented in another window of foot exam." R. 1997. Nevertheless, the ALJ discredited these assertions because "this provider's records do not support this." R. 1816. As Plaintiff points out, this was error. Pl.'s Br. at 18–19, Dkt. 12. The Seventh Circuit has explained that an ALJ cannot disregard a physician's evidence merely because she lacks "detailed notes to back it up" and that this is an "insufficient ground[] for disbelieving the evidence of a qualified professional." *Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014). As such, the ALJ erred by drawing conclusions based on the absence of test results in Dr. Parikh's records.

Furthermore, this Court again finds that the ALJ cherry-picked the record when analyzing the supportability of Dr. Parikh's opined limitations. The ALJ noted that lower extremity examination findings "are inconsistent with the limitations and do not support the extreme limitations." R. 1817. This Court previously ruled that there was a significant amount of evidence in the record that the ALJ overlooked:

> In October 2013, Dr. Parikh's treatment notes indicated that Plaintiff was able to ambulate, but required frequent breaks, that Plaintiff had bilateral ankle stiffness and a limited range of motion in the ankles, and that Plaintiff complained of worsening bilateral leg pain that felt like pins and needles. R. 591. Between November 2012 and February 2014, Plaintiff's treatment notes included references to ulcers, sores, lesions, and rashes on the bilateral lower extremities that Dr. Parikh noted were possibly related to neuropathy. R. 360, 369, 370, 477, 489, 491, 501, 514, 528, 536, 618, 623-624, 723, 863. In February 2014, Dr. Parikh noted Plaintiff's loss of pinprick

10

> sensation on the lower extremities, pain and numbness with a "glove and stocking" distribution, and faint pedal pulses. R. 614, 616, 622. Dr. Parikh also issued Plaintiff a handicap sticker for her car due to Plaintiff's difficulty walking, especially in cold weather. R. 623. Also, in February 2014, Dr. Parveen, Plaintiff's endocrinologist, in assessing Plaintiff's ambulation, noted a reduced heel-to-toe transition, reduced range of motion in the ankles, and a report of severe lower extremity pain. R. 863-864. Between April and November 2014, Dr. Parveen noted Plaintiff's complaints of ongoing tingling in the bilateral legs. R. 704, 752. In August 2015, treatment notes indicated Plaintiff's numbness and tingling were "still active." R. 828. Between May 2016 and February 2018, Dr. Parveen conducted foot exams during each appointment, and consistently found that Plaintiff had an impaired vibration sense. R. 1548, 1556, 1565, 1574, 1584, 1593.

*Carol Z.*, 2020 WL 6940983, at *4 (footnotes omitted). The Court also noted that Plaintiff experienced at least three falls, two of which occurred before 2015. *Id.* at *4, *6 (citing R. 369, 849). Finally, the Court noted that Plaintiff was constantly being treated for neuropathic pain in her lower extremities, including during the pre-2018 period. *Id.* at *4 (citing R. 537, 539, 544, 607, 616, 630, 704, 782, 785, 1548). Despite this Court's previous opinion, the ALJ again fails to address the above evidence, which appears to support Dr. Parikh's assessed lower extremity limitations. This was error then and it is error now. This Court again concludes that the ALJ failed to provide good reasons, supported by substantial evidence, for finding Dr. Parikh's opinions lacked support under the treating physician rule.

With respect to the consistency factor, the ALJ copied essentially the same analysis the prior ALJ used. *Compare* R. 1817, *with* R. 890–91, *and* R. 34–35. Plaintiff argues that this analysis also relies on cherry-picked evidence. Pl.'s Br. at 19–20, Dkt. 12; Pl.'s Reply at 8–9, Dkt. 22. The Court agrees.

As before, the ALJ stated that Dr. Parikh's limitations were excessive and inconsistent with the longitudinal record, "particularly in light of the generally normal examination findings, with periodic findings of reduced sensation, but no consistent gait, reflex, or strength restrictions," and

11

then provided the same examples that were provided in the previous decision. R. 1817; *Carol Z.*, 2020 WL 6940983, at *4 (quoting R. 890). The Court spent the bulk of its prior opinion explaining why this very analysis did not provide good reasons, supported by substantial evidence, for assigning Dr. Parikh's opinions little weight, specifically because it cherry-picked evidence and overlooked evidence that should have been addressed. *Carol Z.*, 2020 WL 6940983, at *4–6. For example, the ALJ stated,

> Dr. Parikh assessed an extreme loss of function in the left upper extremity, however nerve conduction studies indicated at most mild carpal tunnel syndrome. Dr. Parikh also suggested that right arm function was reduced by ten percent in reaching, handling and fingering, however, there is no objective evidence to show that the claimant's carpal release surgery failed to restore function, particularly as a January 21, 2014 note reflected the claimant had intact sensation and a return to work release indicated that the claimant, 6 weeks from surgery could return to work without restrictions [R. 833].

R. 1817. This Court noted, when analyzing essentially the same statement in its previous opinion:

> However, the ALJ again overlooked significant record evidence. For example, in June of 2017 orthopedic surgeon Dr. Bear noted that Plaintiff had reduced grip strength on the left, positive Tinel's sign for the left wrist and elbow, and positive flexion compression and Finkelstein tests. R. 1211, 1215. With respect to the right upper extremity, the ALJ noted that "Dr. Parikh also suggested that right arm function was reduced by ten percent in reaching, handling and fingering, however, there is no objective evidence to show that the claimant's carpal tunnel release surgery failed to restore function ..." R. 890. However, there was evidence that full function was not restored and the ALJ again chose to ignore it. In June of 2017, Dr. Bear noted that the right extremity had reduced grip strength and reduced hand intrinsic strength. At that appointment, Plaintiff had a positive Tinel's sign in the wrist and elbow and a positive Finkelstein test. R. 1210. Additionally, although the flexion compression test and carpal tunnel compression tests were negative, the doctor noted that they caused paresthesia in an ulnar nerve distribution. She had positive index finger triggering, as well as a palpable nodule noted over the flexor tendon of the index finger at the level of the A1 pulley. R. 1210. Moreover, the record indicates that Plaintiff has worn wrist splints/braces consistently from the alleged onset date through the date of the hearing, and that Dr. Bear

> had recommended she wear a splint in October 2013 and again in 2017. R. 562, 663, 674, 693, 707, 838, 921, 1217, 1507, 1523, 1531. 1215. Plaintiff was diagnosed with radial styloid tenosynovitis bilaterally and was recommended to wear a thumb spica splint for both wrists. She declined an injection to alleviate her pain because a past trigger finger injection had resulted in hospitalization due to the increased insulin levels. R. 1215. Finally, Plaintiff's reports of tingling, numbness and pain in the hands and arms is consistent throughout her appointments with her various doctors beginning in February 2013. R. 501, 510, 521, 528, 599, 661, 676, 691, 705, 752, 782, 1210, 1505, 1521, 1538, 1546, 1554, 1562, 1571, 1581, 1590.

*Carol Z.*, 2020 WL 6940983, at *5 (footnotes omitted). Instead of recognizing this evidence and explaining why it was not consistent with Dr. Parikh's opinions, the ALJ merely ignored the evidence once again. The same is true for the remainder of the ALJ's consistency analysis. The ALJ ignored this Court's prior ruling that the rationale was not supported by substantial evidence. Once again, therefore, the ALJ's analysis of the consistency factor is not supported by substantial evidence because it cherry-picks evidence and fails to confront head-on evidence that is consistent with Dr. Parikh's opinions.

In short, the ALJ failed to provide good reasons, supported by substantial evidence, both for denying Dr. Parikh's opinions controlling weight and for assigning them merely "some weight" based on the checklist factors of supportability and consistency. Accordingly, the Court finds that remand is warranted yet again. As before, the Court orders that, on remand, the ALJ shall address each step of the treating physician rule. If the ALJ properly determines at step one that Dr. Parikh's opinions do not deserve controlling weight, then the ALJ must consider the checklist factors under 20 C.F.R. § 404.1527(c) to determine what weight to give to the opinion.

Courts in the Seventh Circuit, including this Court, have sometimes suggested that a new ALJ be assigned on remand to ensure that the full record can be considered with a fresh eye. *See Reid C. v. Saul*, No. 19 CV 50101, 2020 WL 6747001, at *10 (N.D. Ill. Nov. 17, 2020); *see also Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993) ("Selecting a new ALJ is a decision for the

[Commissioner] to make when there has been no proof of bias or partiality by the original ALJ of the case."). It is troubling that even though the Appeals Council took this step on its own initiative after the prior remand, the newly assigned ALJ largely repeated the prior ALJ's analysis and findings regarding Dr. Parikh's opinions. Rather than make any specific recommendation, the Court will simply encourage the Appeals Council to take appropriate steps to ensure this case receives full and fair consideration on remand.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion.

Date: March 17, 2023         By:  _____
                                  Lisa A. Jensen
                                  United States Magistrate Judge